# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

LESTER E. COOK,

        Petitioner,

   v.

STEVEN GLUNT, et al.,

        Respondents.

CIVIL ACTION NO. 1:14-CV-00053

(RAMBO, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

On January 14, 2014, the Court received and filed a counseled petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed by the Petitioner, Lester Cook. (Doc. 1). At all times relevant to this petition, Cook has been incarcerated at SCI-Rockview, located in Centre County, Pennsylvania.

## I. STATEMENT OF THE CASE

### A. PROCEDURAL HISTORY

In his petition, Cook challenges his conviction and sentence by the Court of Common Pleas of York County, Pennsylvania. On December 18, 2007, following a jury trial, Cook was convicted of of aggravated indecent assault, indecent assault, and corruption of minors.[1] (Doc. 1, at 2; Doc. 11-1, at 5-10); *Commonwealth v. Cook*, No. CP-67-CR-0003755-2007 (York Cnty. C.C.P.).[2] He was sentenced by York County Court of Common Pleas Judge Penny L.

---

[1] Three additional charges were either dismissed or resulted in a hung jury. (Doc. 1, at 2 n.1).

[2] In addition to the petition, a federal habeas court may take judicial notice of state court records. *Minney v. Winstead*, No. 2:12-CV-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in

Blackwell on May 23, 2008 to a term of three-to-ten years' imprisonment with the first two-and-

a half-years constituting a mandatory sentence. (Doc. 11-1, at 306-07). Cook was represented by

attorney Matthew Gover before and during trial. (Doc. 1, at 11). After post-sentence motions,

Cook appealed his conviction and sentence to the Superior Court of Pennsylvania on July 24,

2008, which affirmed the verdict but vacated Cook's sentence and remanded for resentencing

on January 15, 2010.[3] (Doc. 1, at 3); *Commonwealth v. Cook*, Docket No. 1329 MDA 2008 (Pa.

Super. Ct.). Attorney Karl Rominger represented Cook on direct appeal. (Doc. 1, at 12). Cook

then petitioned the Supreme Court of Pennsylvania for allocatur, which was denied on

December 29, 2010. *Commonwealth v. Cook*, Docket No. 292 MAL 2010 (Pa.).

Upon the conclusion of direct review, Cook filed a petition for collateral relief under the

Pennsylvania Post-Conviction Relief Act ("PCRA") in the York County Court of Common

Pleas on August 2, 2011, in which Judge Blackwell again presided. (Doc. 1, at 4);

*Commonwealth v. Cook*, No. CP-67-CR-0003755-2007 (York Cnty. C.C.P.). Cook was

represented by attorney Richard Robinson on his PCRA petition. (Doc. 1, at 13). After a

hearing, Cook's PCRA petition was denied in an opinion and order filed by Judge Blackwell on

November 29, 2011. (Doc. 11-1, at 460-67); *Commonwealth v. Cook*, No. CP-67-CR-0003755-

2007 (York Cnty. C.C.P.). The denial of his PCRA petition was affirmed on appeal by the

---

reviewing this petition, the Court has taken judicial notice of the publicly available dockets of
criminal and collateral post-conviction proceedings in the Court of Common Pleas of York
County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

[3] The Superior Court found that the trial court was not obligated to impose a mandatory
minimum sentence because the Commonwealth failed to provide notice of its intent to seek a
mandatory sentence before sentencing. (Doc. 11-1, at 361-370). On April 29, 2011, Cook was
resentenced by Judge Blackwell to a term of three-to-ten years' imprisonment without any
mandatory minimum. (Doc. 11-1, at 389-390).

Superior Court of Pennsylvania on October 19, 2012. (Doc. 11-1, at 504-21); *Commonwealth v. Cook*, No. 2215 MDA 2011 (Pa. Super. Ct.). Cook then petitioned for allowance of appeal to the Pennsylvania Supreme Court, but that too was denied, on May 9, 2013. *Commonwealth v. Cook*, Docket No. 894 MAL 2012 (Pa.).

Cook filed the instant federal petition for a writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2254 on January 14, 2014. Upon reviewing the petition, the District Court directed Respondents to file an answer pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. (Doc. 3). Respondents filed a response to Cook's petition on May 19, 2014, asserting that one of Cook's claims is barred by procedural default and that all claims are without merit. (Doc. 11). Cook filed a reply to the Respondents' answer on June 20, 2014 (Doc. 18), which was supplanted by an amended reply brief filed on December 2, 2015 (Doc. 22) that the Court accepted *nunc pro tunc* (Doc. 27). Having been fully briefed, this petition is now ripe for disposition.[4]

B. HABEAS CLAIMS PRESENTED

Cook presents the following grounds for relief in his federal habeas petition:

(1)     Cook was denied effective assistance of counsel by trial counsel's failure to effectively present character witness testimony at trial;

(2)     Cook was denied due process by the trial court's decision to allow the Commonwealth to present several witnesses to testify to prior consistent statements of the victim, thus "impermissibly bolstering" the victim's testimony; and

(3)     Cook was denied effective assistance of counsel by direct appellate counsel's

---

[4] Cook has also filed motions for release and for bond (Doc. 8; Doc. 19), both of which were denied by the District Court in an April 10, 2015 Order (Doc. 21). On May 18, 2016, Cook filed another motion for release that remains pending before this Court. (Doc. 28). The Court recommends that Cook's second motion for release be denied as moot because his underlying federal habeas claims lack merit.

failure to appeal the trial court's decision to exclude the proffered testimony of Darlene Eck.

(Doc. 1, at 14-18).

## II. DISCUSSION

### A. COOK'S SECOND GROUND FOR RELIEF IS PROCEDURALLY DEFAULTED

In his second ground for relief, Cook argues that the trial court erred in permitting the Commonwealth to present several witnesses who testified as to prior consistent statements made by the victim, in contravention of Pennsylvania Rule of Evidence 613(c). (Doc. 1, at 17). Respondents counter that Cook's second ground for relief is not properly before this Court because the claim was "raised before the Pennsylvania Courts purely as a claim involving application of state law," and thus any federal constitutional component of this ground for relief was procedurally defaulted in state court. (Doc. 11, at 21).

#### 1. Procedural Default

Generally, a federal district court may not grant a habeas petition unless the petitioner has first exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004); *see also O'Sullivan*, 526 U.S. at 844–55 ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ."). "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *as amended* (Jan. 16, 1998)

("[F]ederal habeas claim must have been 'fairly presented' to the state courts, i.e., it must be the substantial equivalent of that presented to the state courts."). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made," *Anderson v. Harless,* 459 U.S. 4, 6 (1982), as the petitioner "must have communicated to the state courts in some way that [the petitioner was] asserting a claim predicated on federal law." *McCandless,* 172 F.3d at 261.

Respondents contend that Cook raised his claim—that the trial court erred in permitting the Commonwealth to present witnesses who testified as to prior consistent statements made by the victim—within the context of state law rather than as a federal constitutional claim. (Doc. 11, at 21-22). In his amended reply brief, Cook concedes that he only presented this ground for relief as a state law claim on direct appeal. (Doc. 22, at 16). Because Cook never served notice to Pennsylvania's state courts that he was asserting a separate federal claim, any federal claim based on the prior consistent statement testimony was not "fairly presented" in state court. Moreover, because "federal habeas corpus relief does not lie for errors of state law," the alleged violation of Pennsylvania Rule of Evidence 613(c) that Cook did raise on direct review is not cognizable in these federal habeas proceedings. *Lewis v. Jeffers,* 497 U.S. 764, 765 (1990).

Cook cannot now go back and "fairly present" the federal dimension of his claim in state court because the time for him to bring a new direct appeal or PCRA petition has expired. *See* Pa. R.A.P. 903(c)(3) (requiring notice of appeal to the Superior Court to be filed within 30 days of the imposition of judgment of sentence); 42 Pa. Cons. Stat. § 9545(b)(1) (requiring PCRA petition to be filed "within one year of the date the judgment becomes final"). "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is

satisfied because there is 'an absence of available State corrective process.'" *McCandless*, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)(1)(B)(i)); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). However, "claims deemed exhausted because of a state procedural bar are procedurally defaulted . . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000) (citing *McCandless*, 172 F.3d at 260). Thus, as Cook admits in his reply brief, his second ground for relief is procedurally defaulted. (Doc. 22, at 16).

### 2.  Cause and Prejudice

Generally, a federal court will not review a claim that is procedurally defaulted. *Johnson v. Folino*, 705 F.3d 117, 127 (3d Cir. 2013); *Lines*, 208 F.3d at 160. Notwithstanding the procedural default, however, a federal court may review the merits of procedurally defaulted claims if the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the claim is not considered. *Lines*, 208 F.3d at 160; *McCandless*, 172 F.3d at 260. It is the petitioner's burden to demonstrate circumstances excusing procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750. To show "cause," a petitioner must establish "that some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner satisfies the "prejudice" prong by showing that the trial was "unreliable or . . . fundamentally unfair" because of a violation of federal law. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Alternatively, in order to demonstrate a "fundamental miscarriage of justice," a petitioner must

present new evidence to show "that constitutional error has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Although Cook notes in his reply brief that his procedural default may be excused by establishing "cause and prejudice" or a "fundamental miscarriage of justice," he fails to demonstrate how—or even allege that—either of these concepts apply to the facts of his case. (Doc. 22, at 16). Instead, Cook merely makes the case for the first time that Judge Blackwell exceeded the scope of Federal Rule of Evidence 801(d)(1)(B) in allowing the Commonwealth to present several witnesses to offer testimony of prior consistent statements made by the victim. (Doc. 22, at 17). This argument does not establish "that some objective factor external to the defense impeded [Cook's] efforts to comply with the [Pennsylvania]'s procedural rule," or "that constitutional error has resulted in the conviction of one who is actually innocent of the crime." *Murray*, 477 U.S. at 488; *Schlup*, 513 U.S. at 324. As Cook has failed to identify justifiable cause to excuse his default, it is recommended that his second ground for relief be denied as procedurally defaulted.[5]

---

[5] Even if this ground for relief had not been procedurally defaulted, it would nonetheless fail on the merits. The Pennsylvania courts' consideration of Cook's claim under Pennsylvania Rule of Evidence 613(c) is consistent with Federal Rule of Evidence 801(d)(1)(B). "Prior consistent statements are admissible under both Pennsylvania and federal law as non-hearsay to rebut an express or implied charge of fabrication if the statements are made before the declarant had a motive to falsify." *Fluellen v. Kerestes*, No. CIV.A. 12-6751, 2013 WL 395500, at *4 (E.D. Pa. Jan. 14, 2013), *report and recommendation adopted*, No. CIV.A .12-6751, 2013 WL 706062 (E.D. Pa. Feb. 27, 2013). Cook argues that the prior consistent statement testimony should not have been admitted because Gover made no "express or implied charge" that the victim's own testimony was fabricated. (Doc. 1, at 17; Doc. 22, at 17-18). However, Respondents convincingly rebut this assertion by pointing out several instances where Gover attempted to impeach the victim's testimony. (Doc. 11, at 23-26; Doc. 11-1, at 87-88, 130-134). Accordingly, the prior consistent statement testimony was properly admitted under federal law. *See* Fed. R. Evid. 801(d)(1)(B). As a final contention, Cook appears to argue that there should have been some sort of limiting instruction as to admissibility of the prior consistent statement testimony. (Doc. 22, at 17-18). However, this assertion is clearly contradicted by the Advisory Committee

B.  CLAIMS ADDRESSED ON THE MERITS

Respondents agree that Cook's two remaining claims were properly exhausted, but contend that each claim fails on the merits. (Doc. 11, at 20-21, 27-28). Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran,* 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman,* 525 U.S. 141, 146 (1998)). Accordingly, a federal court may not grant a state prisoner habeas relief with respect to any claim that was adjudicated on the merits in state court, unless the state court proceedings:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> 28 U.S.C. § 2254(d).

The Supreme Court defines "clearly established federal law" as "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

In his two remaining grounds for relief, Cook argues that his Fifth and Sixth Amendment rights to effective counsel were violated by trial and direct appellate counsel, respectively. (Doc. 1, at 14-18). The standard for ineffective assistance of counsel claims was established in the seminal Supreme Court case of *Strickland v. Washington*. 466 U.S. 668 (1984). In *Strickland*, the Supreme Court articulated a two-pronged test for evaluating whether counsel's

---

Notes to Federal Rule of Evidence 801. Fed. R. Evid. 801(d)(1)(B) advisory committee's note ("Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence. Under the rule they are substantive evidence.").

performance was constitutionally deficient.[6] Specifically, "[u]nder *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). This review of counsel's performance must be "highly deferential," as the petitioner has the burden of overcoming the strong presumption that his counsel's conduct fell "within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. Even if a petitioner demonstrates that his attorney's performance fell below prevailing professional norms, habeas relief will only be available if he further demonstrates that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 691-92. To demonstrate that he was prejudiced by counsel's ineffective performance, a petitioner "must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts properly deny an ineffective assistance of counsel claim upon determining that a petitioner fails to make a sufficient showing under either the performance component or the prejudice component of the *Strickland* two-part test. *Strickland,* 466 U.S. at 697.

Although Pennsylvania state courts evaluate ineffective assistance claims by applying a test that differs slightly from *Strickland*, the United States Court of Appeals for the Third Circuit has made clear that Pennsylvania's test is not contrary to *Strickland*. *Jacobs v. Horn*, 395 F.3d 92,

---

[6] Although *Strickland* itself was premised on the Sixth Amendment right to effective assistance of counsel at trial, it since has been extended to apply to Fifth Amendment ineffective assistance of direct appellate counsel claims. *United States v. Cross*, 308 F.3d 308, 315 & nn.11-12 (3d Cir. 2002).

106 n.9 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000)). Accordingly, under the deferential standard mandated by 28 U.S.C. § 2254(d)(1), the Court may only grant Cook habeas relief on his ineffective assistance of counsel claims upon finding that the PCRA Court and Superior Court's decisions involved an unreasonable application of *Strickland*. Furthermore, because Cook's ineffective assistance of counsel claim was adjudicated on the merits in state court, this Court's "review is 'doubly deferential:' the state court was obligated to conduct deferential review of counsel's performance and [this Court] must give deference to the state court rulings under AEDPA." *Showers v. Beard*, 635 F.3d 625, 629 (3d Cir. 2011).

   **1.  Ground One: Cook was denied effective assistance of counsel by trial counsel's failure to effectively present character witness testimony at trial.**

   Cook first alleges that his Sixth Amendment right to effective counsel was violated when Attorney Gover failed to effectively submit character witness testimony at trial. (Doc. 1, at 14-16). Specifically, Cook argues that Gover failed to prepare and lay a proper foundation for character witness Millard Carlisle as was needed to elicit helpful testimony of Cook's pertinent character traits, and then, after Judge Blackwell struck Carlisle's character witness testimony, failed to call other character witnesses on Cook's behalf. (Doc. 1, at 9-10, 15-16). The Court will address each of these arguments in turn.

      a.  <u>Pre-trial witness preparation and direct examination strategy</u>

   Cook first argues that Attorney Gover rendered ineffective assistance in failing to adequately prepare character witnesses for trial and failing to lay a proper foundation during Carlisle's testimony on direct examination. (Doc. 1, at 15). At his PCRA hearing, Cook testified that he informed Gover of "about six" possible character witnesses who could potentially testify on his behalf. (Doc. 11-1, at 397). Cook further testified that Gover contacted all of these

character witnesses and that they were present at Cook's trial. (Doc. 11-1, at 403). Three of Cook's potential character witnesses—Jane Englert, Patricia Fourhman, and Hope Yeager—testified at the PCRA hearing and stated that they briefly met with Gover before the trial began to prepare for their testimony at trial. (Doc. 11-1, at 439-50). [7]

Attorney Gover also testified at the PCRA hearing, explaining that he anticipated difficulties in laying a proper foundation for the character witnesses when he prepared them to testify prior to trial, and that this concern came to fruition when Carlisle took the stand. (Doc. 11-1, at 408-10). Specifically, in regard to the difficulty establishing a foundation for Carlisle's character testimony, Gover noted:

> It is just generally recalling the specifics of anything that took place ten years ago and allowing that witness to say, based on those discussions which took place ten years ago, do you have an opinion as to this person's character for law-abidingness in the community. And it is common sense – and you don't typically have that in this character setting. It is usually a couple of years ago. It is a lot easier for juries to swallow. So, it was problematic as we prepared and it became problematic on the stand.

(Doc. 11-1, at 409-10).

Although Gover elicited testimony from Carlisle as to the lack of any negative comments heard within the community regarding Cook's reputation for truthfulness or peacefulness, the Commonwealth undermined this testimony on cross-examination by exposing the fact that Carlisle had not actively discussed Cook's reputation within the community. (Doc. 1, at 9-10; Doc. 11-1, at 229). The Commonwealth then objected to Carlisle's testimony as lacking a

---

[7] Englert, Fourhman, and Yeager all testified that they had known Cook for decades and never heard any negative comments within the community in regard to Cook's reputation for truthfulness or peacefulness. (Doc. 11-1, at 440-41, 445, 448). Moreover, Englert testified that she never discussed Cook's reputation with anyone whatsoever, whereas Fourhman and Yeager did not state whether they had ever discussed Cook's reputation with others. (Doc. 11-1, at 444-50).

proper foundation, which the trial court agreed with and instructed the jury to disregard Carlisle's character testimony. (Doc. 1, at 9-10; Doc. 11-1, at 408-09).

Cook fails to demonstrate how Gover's pre-trial preparation and direct examination strategy fell below an objectively unreasonable standard. As noted in *Strickland*, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Here, the facts of the case during the time period in question reveal that Gover's actions were reasonable given the limited options at his disposal. Despite alleging that Gover failed to properly prepare and lay a foundation for Carlisle's testimony, Cook does not explain what his trial counsel could or should have done differently in regard to the presentation of character evidence. (Doc. 1, at 15). Indeed, at the PCRA hearing, Gover bemoaned the fact that all of his potential character witnesses were "sketchy at best because it is a ten-year-old frame of reference" between the time the alleged crimes occurred and the time of the trial. (Doc. 11-1, at 408-09). To the extent that Cook alleges that Gover could have elicited better testimony from Carlisle on direct examination, the Court finds it noteworthy that Carlisle definitively stated on cross-examination that he had not discussed Cook's reputation for truthfulness and law-abidingness with other members of the community. (Doc. 11-1, at 229). If Carlisle provided a more ambiguous response that he could not recall whether he had discussed Cook's reputation in the past, then perhaps Gover could be blamed for failing to better prepare Carlisle to recall any conversations that he may have had. Furthermore, Cook did not present any evidence to the PCRA court indicating that other potential character witnesses discussed

Cook's reputation with members of the community during the relevant time period or otherwise could have been more helpful to Cook's case than Carlisle.[8]

Simply put, the Court cannot conclude that Gover's actions were objectively unreasonable either in preparing Carlisle for trial or in regard to the method of direct examination. Instead, Gover appears to have performed reasonably in light of the limited options available to him by attempting to offer negative proof of Cook's good reputation through Carlisle's character testimony. The Court therefore rejects Cook's assertion that Gover's pre-trial preparation or direct examination strategy was unreasonable under *Strickland*.

### b. Failure to call additional character witnesses

In addition to his attack on Gover's pre-trial preparation and direct examination strategy, Cook also challenges trial counsel's decision not to call further character witnesses after the trial court struck Carlisle's reputation testimony. Specifically, Cook asserts that Gover failed to call additional character witnesses to testify that they never heard anyone in the community speak negatively about Cook's reputation for peacefulness and truthfulness because the trial court erroneously "believed that the only way character testimony could be introduced was by way of testimony from a character witness who actually heard someone's reputation being discussed in the community during the time period of the alleged crimes." (Doc. 22, at 6-

---

[8] Attached to his amended reply brief, Cook presents affidavits of several potential character witnesses who state that they would have been willing to provide reputation testimony on Cook's behalf at trial. (Doc. 22-1). Although some of the affidavits were produced by the "about six" character witnesses that Cook informed his counsel of prior to trial, many other affiants appear not to have been previously named as potential character witnesses in the context of this case. (Doc. 22-1). Each of the affidavits were sworn in the latter half of 2013, over twenty months after Judge Blackwell denied Cook's PCRA petition. (Doc. 22-1). Because these affidavits were not presented as evidence for the PCRA court's consideration, this Court cannot now consider them in its determination of whether the PCRA court's decision "was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d)(2).

7). Cook further alleges that Gover failed to recognize the trial court's alleged misstatement of the law in regard to the foundation required to present character testimony. (Doc. 22, at 6).

This Court need not determine whether the trial court's ruling on the foundation required for character testimony was incorrect—or whether Gover mistakenly shared this belief—because trial counsel's decision not to call additional character witnesses fell "within the wide range of reasonable professional assistance" under *Strickland*. As a preliminary matter, Cook has procedurally defaulted on any potential claim for habeas relief based on the trial court itself ruling that character witnesses must have discussed Cook's reputation with others in the community in order to be qualified to testify, because Cook did not raise this claim on direct appeal. (Doc. 11-1, at 322-31, 337-59); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). The Court also notes that Cook's focus on whether or not Gover erroneously agreed with the trial court's alleged misstatement of law is unavailing, as "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). Thus, the proper question is whether Gover was objectively unreasonable in failing to call additional character witnesses.

Both the PCRA court and the Superior Court on PCRA review concluded that Gover's representation was reasonable in regard to character witness preparation, the direct examination of Carlisle, and the decision not to call further character witnesses. (Doc. 11-1, at 465-66, 516). A review of the record before the Court, and particularly Gover's PCRA hearing testimony, reveals that the PCRA court and the Superior Court appropriately applied the

*Strickland* standard in finding that Gover's failure to call further character witnesses was not objectively unreasonable. In assessing the reasonableness of counsel's actions, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (quotation omitted). As part of his testimony during the PCRA hearing, Gover described the events surrounding his decision not to call additional witnesses:

> We called one witness and that blew up in the sense that the Court wasn't prepared to . . . go forward and accept that witness as a character witness and thereby give me the instruction which we all want, which is the real purpose behind it. So, when that developed – and you know, in my exchange with the court, you have to be somewhat conscious of how you are perceived by the jury in terms of my back and forth with the judge – I wasn't getting anywhere. And you are playing to two audiences. You are playing to the jury. You are playing to the Court. And I felt at that time that trying to pursue and get through multiple witnesses who are sketchy at best because it is a ten-year-old frame of reference, that we couldn't proceed with any further character witnesses.

(Doc. 11-1, at 408-09).

Attorney Gover explained to the PCRA court that three factors influenced his decision not to call additional character witnesses. (Doc. 11-1, at 414-15). First, after the trial court's clear indication that it would not permit character evidence—and thus would not give a character witness jury instruction—unless a witness had previously discussed Cook's reputation with others in the community, Gover spoke with the remaining character witnesses and determined that none of them could provide the foundation that the trial court required. (Doc. 11-1, at 414). Second, Gover stated that he "was not comfortable losing another argument in front of the jury with the judge because, quite frankly, with Deputy District Attorney Moore and the [trial] Court, they seemed to be in sync at the time and [he] wasn't getting anywhere." (Doc. 11-1, at 410, 414 ("[I]t is a strategic decision that you can only be beat so many times with objections.")). Last, Gover concluded that the benefit of attempting to introduce more

character testimony, although important, was outweighed by the cost of fighting what seemed certain to be a losing argument. (Doc. 11-1, at 414-15).

Attorney Gover's PCRA hearing testimony clearly articulates that his decision not to call additional witnesses was made "in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. As a general matter, "it is not ineffective to fail to make losing arguments . . . ." *United States v. Parker*, No. CIV.A. 13-3325, 2014 WL 3952674, at *1 n.2 (E.D. Pa. Aug. 11, 2014) (citing *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996)); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Here, Gover knew the foundation that the trial court required after the court instructed the jury to disregard Carlisle's character testimony, and Gover also was aware that none of his potential character witnesses could satisfy this foundation requirement because none of them recalled discussing Cook's reputation within the community. (Doc. 11-1, at 230-31, 414-15). It was therefore reasonable for Gover to conclude that attempting to present any further character testimony would have been futile because they did not meet the requirements that the trial court imposed. *See Luparella v. United States*, 335 F. App'x 212, 215 (3d Cir. 2009) (not precedential) ("In this context, Luparella's counsel could have reasonably concluded that any objection would be unsuccessful. . . . Thus, his performance was not deficient and Luparella fails to meet the first prong of the *Strickland* analysis."). Furthermore, Gover expressed that the decision not to call additional character witnesses was a strategic choice in light of the previous arguments he had lost in front of the jury over the course of the trial. (Doc. 11-1, at 410, 414); *United States v. Lively*, 817 F. Supp. 453, 462 (D. Del. 1993) ("As a general rule, decisions relating to a reasoned choice of trial strategy and tactics are not cognizable in a federal habeas corpus proceeding in the context of

an ineffective assistance of counsel claim.") (quotation omitted), *aff'd*, 14 F.3d 50 (table). Because Gover did not act objectively unreasonably in choosing not to call additional character witnesses, this aspect of Cook's first ground for relief also must fail under *Strickland*.

Accordingly, this Court recommends that Cook's first ground for relief be denied because the PCRA Court and Superior Court did not unreasonably apply the *Strickland* standard in holding that Cook's ineffective assistance of trial counsel claim fails on the merits.[9]

>    **2.   Ground Three: Cook was denied effective assistance of counsel by direct appellate counsel's failure to appeal the trial court's decision to exclude the proffered testimony of Darlene Eck.**

In his final ground for relief, Cook alleges that his Fifth Amendment right to effective assistance of counsel was violated by direct appellate counsel Karl Rominger's failure to appeal the trial court's exclusion of testimony from Cook's witness Darlene Eck. (Doc. 1, at 17-18). Eck would have testified that once, after giving the victim a ride home from school, both she and the victim entered the victim's house to see the victim's father viewing a pornographic video while in the presence of the victim's siblings. (Doc. 1, at 10-11). Attorney Gover sought to use this testimony at trial as evidence that the victim had been exposed to sexually explicit materials in the past from a source other than Cook. (Doc. 11-1, at 206). The trial court deemed Eck's proffer to be inadmissible because the inference raised was too prejudicial and not directly

---

[9] Alternatively, as noted by the PCRA court, this ground for relief fails because Cook cannot establish that Gover's performance—even if objectively unreasonable—was prejudicial to his defense. (Doc. 11-1, at 466). The trial court clearly specified the foundation testimony it considered necessary for the presentation of character evidence, and Gover did not have any witnesses at his disposal that could provide this foundation. Therefore, if Gover had called additional character witnesses, their testimony also would have most likely been rejected by the trial court, and thus Cook cannot establish "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

relevant to Cook's defense. (Doc. 11-1, at 206-07, 466). Respondents urge this Court to follow the rulings of the PCRA Court and the Superior Court, both of which held that Rominger did not act inappropriately in failing to pursue a meritless claim. (Doc. 11, at 33).

Cook's claim of ineffective assistance of appellate counsel fails under the first prong of the *Strickland* test because Attorney Rominger's performance was not objectively unreasonable. First, "[a]n attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal." *Bezarez v. Pierce*, 107 F. Supp. 3d 408, 413 (D. Del. 2015) (footnote omitted). Here, even if the trial court's exclusion of Eck's testimony was potentially a non-frivolous issue on direct appeal, Rominger certainly was not required to raise it. Under Pennsylvania law, "[t]he admissibility of evidence is within the sound discretion of the trial court, wherein lies the duty to balance the evidentiary value of each piece of evidence against the dangers of unfair prejudice, inflaming the passions of the jury, or confusing the jury." *Commonwealth v. Flor*, 998 A.2d 606, 623 (Pa. 2010). In contemplating Eck's proffered testimony, the trial court performed this balancing test and determined that the information was of minimal evidentiary value because Eck could only speak to a single occurrence where sexually-explicit material was viewed in the victim's presence, as opposed to more probative evidence indicating that the victim regularly was exposed to this sort of material.[10] (Doc. 11-1, at 207).

Judge Blackwell revisited the issue in her PCRA opinion, and noted that Eck's proffered testimony—in addition to not being probative of Cook's own conduct—was also highly

_____

[10] Respondents likewise point out that the victim's knowledge of or exposure to sexually-explicit content, the purpose for which Gover sought to have Eck's testimony admitted, is neither an element of nor a defense to the charges that Cook faced. (Doc. 11, at 30).

prejudicial to the victim. (Doc. 11-1, at 464). The Superior Court affirmed on PCRA review, finding that "[t]he trial court . . . acted well within its discretionary authority to weigh the proffered relevance and possible prejudicial effects of the testimony, and [the Superior Court] detect[s] no basis upon which to conclude that the trial court abused that discretion." (Doc. 11-1, at 520-21). Given the strong presumption in favor of upholding the trial court's evidentiary rulings and the evidence on the record that Judge Blackwell properly balanced the value of Eck's proffered testimony against its prejudicial nature, there is ample basis to conclude that Rominger was not objectively unreasonable in failing to raise the trial court's exclusion of Darlene Eck's testimony as an issue on direct appeal. This Court therefore recommends that Cook's third ground for relief be denied because the PCRA Court and Superior Court did not unreasonably apply the *Strickland* standard in holding that Cook's ineffective assistance of appellate counsel claim fails on the merits.

### III. RECOMMENDATION

Based on the foregoing, it is recommended that the petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that Cook's second motion for release (Doc. 28) be **DENIED AS MOOT** because his underlying habeas claims lack merit. Finally, the Court recommends against the issuance of a certificate of appealability, as Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**Dated: June 21, 2016**                          *s/ Karoline Mehalchick*
                                                  **KAROLINE MEHALCHICK**
                                                  **United States Magistrate Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LESTER E. COOK,

      Petitioner,

    v.

STEVEN GLUNT, et al.,

      Respondents.

CIVIL ACTION NO. 1:14-CV-00053

(RAMBO, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 21, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: June 21, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**